HAROLD W. GLISSMANN, APPELLEE, V. F. H. BAUERMEISTER ET AL., APPELLEES, SERENA E. GRABOW ET AL., APPELLANTS.

19 N. W. 2d 43

FILED JUNE 1, 1945.   No. 31885.

*Gray & Brumbaugh,* for appellants.

*S. L. Winters* and *Oscar Doerr,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

Appellant, Serena E. Grabow, filed a motion for judgment on the mandate of this court entered on October 6, 1941.   The district court did not enter judgment on the mandate in conformity with the motion.   Instead, it permitted the filing of further pleadings for and in behalf of the parties at interest, appointed a master commissioner

who held a hearing, took further testimony, and made findings from which it entered a judgment different than the judgment directed by this court as set forth in the mandate. Hence this appeal.

To determine this appeal, a brief summary of the history of this protracted litigation is necessary. The facts are adequately set forth in the companion cases of *Glissmann v. Orchard*, 139 Neb. 344, 297 N. W. 612, and the case of *Glissmann v. Bauermeister*, 139 Neb. 354, 297 N. W. 617 and 299 N. W. 225. A brief summary of the pertinent facts set forth in the foregoing opinions discloses in substance, the following: That Henry C. Glissmann owned the Valley View Golf Course property which had been foreclosed and the property was being sold. Through negotiations with his sister, Serena E. Grabow, arrangements were made for her to bid in the property which she did, bidding therefor $23,725 which was a higher bid than the bid of Edmond H. Orchard. Henry C. Glissmann was unable to furnish the money to cover the bid made by his sister. Through further negotiations between Serena E. Grabow and Edmond H. Orchard, the bid of Serena E. Grabow was assigned to Edmond H. Orchard, and the sale of the property was confirmed in him.

Exhibit 33, appearing throughout the record and as set forth in *Glissmann v. Orchard, supra,* substantially in the following language, is a contract between Serena E. Grabow and her brother, Henry C. Glissmann, and provides: " * * * where as it is to the mutual advantage of the contracting parties hereto, that the first party, pledge her share in the estate of the late Hans C. Glissmann (her father), as security in connection with other securities offered so that the parties hereto can procure and complete, a certain deal in which E. H. Orchard, of Omaha, Neb., is to take a deed to the 70 acres included in what is known as the Valley View Golf Links, and to lease the same back to Serena E. Grabow, and give a five year option to buy same, at a price mentioned in contract entered into with Edmond H. Orchard, the option to be assigned to Tena E. Glissmann,

wife of Henry C. Glissmann, now therefore:" that in consideration of Serena E. Grabow pledging her share in her father's estate, Henry C. Glissmann would sell, assign and set over to her and her heirs all right, title and interest of Henry C. Glissmann in his father's estate and grant her and her heirs the right to receive, receipt for, and acknowledge all papers in connection with the share of Henry C. Glissmann in the estate of his father, and in consideration of his assignment to her of all of his interest in the estate of his father she agrees to execute any instruments necessary to pledge her share in the estate of her father.

It developed that Serena E. Grabow pledged $5,500 of her share of her father's estate to Edmond H. Orchard, and in order to obtain the option, as provided for in the contract, an additional pledge was made by Tena E. Glissmann, wife of Henry C. Glissmann, of five acres, for the purpose of the pledge, valued at $1,500. The option agreement entered into between Edmond H. Orchard and his wife and Serena E. Grabow and her husband March 28, 1929, provided for a lease of the property to Serena E. Grabow for five years commencing January 1, 1929, and terminating December 31, 1933, and Serena E. Grabow was to pay an annual rent of $1,650, and all taxes and assessments levied or assessed against the property, and have the right to redeem the property as provided for in the contract for $26,000. The option agreement having been assigned to Tena E. Glissmann, she then had the right to redeem under the terms of the contract. See *Glissmann v. Orchard, supra.*

Part of the estate of Hans Glissmann consisted of a contract wherein he had sold certain real estate to what is known as the Happy Hollow Club, Inc., the amounts evidencing the purchase to be paid in to his estate in installments. These installments constituted interests of his daughter, Serena E. Grabow, and his son, Henry C. Glissmann in the estate. Henry C. Glissmann assigned his interest in his father's estate to his wife, Tena E. Glissmann, on October 15, 1928, and she assigned this interest, November 3, 1930, to their son, Harold W. Glissmann. See *Glissmann v. Bauermeister, supra.*

Harold W. Glissmann brought an action in equity against Serena E. Grabow and several other defendants to obtain certain money held by the Happy Hollow Club and trustees thereof. Serena E. Grabow interpleaded and asked that she be awarded the funds and credits claimed by the plaintiff, and other funds and credits claimed to be due her from the defendants Orchard. This court held that Harold W. Glissmann was not entitled to the payments due on his father's share which the father had pledged to his sister; that in the case of *Glissmann v. Orchard, supra,* Tena E. Glissmann was entitled to redeem the homestead property by complying with the terms of the contract. See *Glissmann v. Bauermeister, supra.* The case of *Glissmann v. Bauermeister, supra,* was reversed and dismissed.

On motion to clarify the original opinion, a supplemental opinion was filed by this court July 3, 1941. The supplemental opinion recites in part: "Therefore, in addition to the entry of the judgment heretofore rendered, and supplemental thereto, judgment is hereby entered in favor of Serena E. Grabow on her counterclaim and cross-petition against the plaintiff and defendants Henry C. Glissmann and Tena E. Glissmann for all moneys due from defendant Happy Hollow Club, Inc., * * * " and the trustees, the Happy Hollow Club and others are named that might have money in their possession representing the one-eighth interest of Henry C. Glissmann in the estate of Hans C. Glissmann, "and the district court is further directed to enter judgment in favor of Serena E. Grabow and against defendants Henry C. Glissmann and Tena E. Glissmann for such sums as that court finds have been received by Henry C. Glissmann, Tena E. Glissmann and Harold W. Glissmann from and after March 28, 1929, together with interest thereon from date so received, and which said sums represent payments on the aforesaid share of Henry C. Glissmann in the estate of Hans C. Glissmann."

The mandate of this court dated October 6, 1941, contained the judgment as heretofore set out in the supplemental opinion, and directed the district court to proceed in

conformity with the judgment of this court. The mandate had attached to it a certified copy of the opinion of this court and incorporates the same therein by reference.

On October 13, 1942, Serena E. Grabow filed a motion for an order fixing and determining the amount of money and interest thereon received by Harold W. Glissmann, Henry C. Glissmann and Tena E. Glissmann from and after March 28, 1929, and forming a part of the share of Henry C. Glissmann in the estate of Hans C. Glissmann, and prayed judgment in conformity with the mandate with interest at 6 per cent per annum. To this motion Harold W. Glissmann and defendants Henry C. Glissmann and Tena E. Glissmann filed an answer, counterclaim and prayer for equitable relief, praying the district court to determine the status of the accounts of the parties and render judgment for any excess above one full share of her father's estate received by Serena E. Grabow. Thereafter there were numerous motions and other pleadings filed which need not be set out. We set forth only that part of the subsequent proceedings to the filing of the motion for judgment on the mandate as may be pertinent to a determination of this appeal.

The testimony before the master discloses: That from and after March 28, 1939, Henry C. Glissmann, Tena E. Glissmann and Harold W. Glissmann have received the following payments from the estate of Hans Glissmann, deceased: Principal, $3,508.76 and that the interest amounts to $2,617.24, or a total of $6,126; that on April 4, 1938, Harold W. Glissmann received a payment of $138.50 and the interest on this amount from April 4, 1938 to June 10, 1943 amounting to $43.08; that the appellant received through the trustee Bauermeister, from her own share in the estate of Hans Glissmann, $3,508.76, and the further sum of $1,801.15, and from March 24, 1936 to October 13, 1942, $1,713.82, and that one Moeller, as trustee, had on hand for the appellant, in the Federal Savings and Loan Association, $803.15 from which should be deducted $76.77 interest which was earned while deposited in the Savings and Loan account, leaving a net balance of $726.48, held by Moeller

for the appellant, but subject to her assignment to Edmond H. Orchard, and on April 4, 1938 the appellant received $138.50 to apply on her share in her father's estate; that on June 2, 1942 the clerk of the district court of Douglas county paid unto the appellant the sum of $3,282.90; that this money was held by the clerk for Henry C. Glissmann and received as part of his share in his father's estate; that Edmond H. Orchard, from and between August 24, 1933 and April 12, 1938, authorized Bauermeister and Moeller, as trustees, to release unto the appellant $2,700 of the $5,500 interest assigned by her to Orchard as collateral for the lease of the Valley View Golf Course; that at the time of the hearing, $800 of the balance of $2,800 was held by Moeller, and that the balance of $2,000 had not been collected by the trustee, Moeller. All of the rent, taxes and insurance to Orchard on the golf club lease were paid by Henry C. Glissmann, he being in possession of the premises up to the spring of 1940. Henry C. Glissmann vacated the premises about March 1, 1942. Therefore, Serena E. Grabow had a contingent liability for the rent, taxes and insurance for the years 1940 and 1941 on the Valley View Golf Course.

The recapitulation shows that the amount received by the Glissmanns from the share of Henry C. Glissmann in the estate of Hans Glissmann, with interest, amounted to $6,-307.58, and the amount received by the appellant, Serena E. Grabow, from her share in the estate of Hans Glissmann was $7,162.23, and the additional amount of $3,282.90 paid to her by the clerk of the district court out of Henry C. Glissmann's share in his father's estate. The appellant was content to accept the figures as to the amounts received by Harold W. and Tena E. Glissmann as assignees of Henry C. Glissmann of his share in his father's estate, and prays for a judgment for such amount under the theory of the judgment pronounced in the supplemental opinion of *Glissmann v. Bauermeister, supra.* The amounts received by Serena E. Grabow do not seem to be seriously questioned by her.

The court approved the report of the master and entered a judgment thereon for Henry C. Glissmann against Serena

E. Grabow, the appellant, for the sum of $3,282.90, without interest until termination of the liability of the appellant under the golf course lease for 1940, 1941 and up to March 1, 1942, and that no execution issue until after termination of such liability of Serena E. Grabow; that Henry C. Glissmann recover the balance, if any, paid for the share of Henry C. Glissmann in the estate of his father, after deducting therefrom any payments required to be made by Serena E. Grabow personally to satisfy any liability due to Edmond H. Orchard on account of the golf course lease, without interest until after termination of the lease liability, and that no execution shall issue until after said time; that if Henry C. Glissmann terminates or causes to be terminated the liability of Serena E. Grabow on the golf course lease with Edmond H. Orchard, without any deduction from the collateral now in the hands of Edmond H. Orchard and without any payment by her personally, that then and in that event, or after Henry C. Glissmann has reimbursed her, or she has reimbursed herself for any rental or other liability under said lease out of the $3,282.90 now in her hands, and any balance payable for the share of Henry C. Glissman in said estate, then Serena E. Grabow shall reassign to Henry C. Glissmann all of his interest in the estate of his father which she held as collateral. The costs of the action, the fees of the master and counsel of Serena E. Grabow were ordered to be paid by Henry C. Glissmann.

There are certain offsets and interest charges appearing in the court's decree which we will not here set forth, but which, from an analysis of the evidence in the instant case, seem to be an equitable and proper adjustment of such matters.

The district court found that in this court's opinion, *Glissmann v. Bauermeister, supra,* on page 361 this court held that by exhibit 33, the contract heretofore set out in the opinion, entered into by the two parties, Serena E. Grabow and Henry C. Glissmann, he *pledged* to her all of his rights and share in the estate of his father if she would enter into the contract with Edmond H. Orchard.

There is a clear distinction between a pledge and an assignment and passing title of an interest in an estate. "A pledge * * * is a bailment of personal property as a security for some debt or engagement, the property being redeemable on specified terms, and subject to sale in the event of default." 41 Am. Jur., p. 582, sec. 2. " * * * in the case of a pledge, the rights of the parties with respect to the property involved remain within the control of the original owner or pledgeor to the extent that he may terminate the pledgee's lien and right of possession by payment of the secured obligation." 41 Am. Jur., p. 583, sec. 3.

The debt or liability secured by Henry C. Glissmann's pledge is the liability of Serena E. Grabow to Edmond H. Orchard on a lease option agreement, and when the extent of that liability has been determined in dollars and cents and Serena E. Grabow has been restored her security pledged to Edmond H. Orchard intact or with any diminution made good by Henry C. Glissmann and his assigns, Henry C. Glissmann or his assigns are entitled to a return of such of the remaining part constituting his interest in his father's estate held in accordance with his pledge.

This court, in *Glissmann v. Bauermeister, supra,* said in its opinion that Serena E. Grabow was entitled to the possession of the money paid on the share of Henry C. Glissmann to the extent of the obligation of Serena E. Grabow to Edmond H. Orchard. In connection with the foregoing, it becomes necessary to determine the effect of the judgment pronounced by this court in the supplemental opinion of *Glissmann v. Bauermeister, supra,* as it appears in the mandate and in connection with the original opinion of this court.

In *State ex rel. Johnson v. Hash,* 145 Neb. 405, 16 N. W. 2d 734, this court held: "Where a mandate of the Supreme Court makes the opinion of the court a part thereof by reference, the opinion should be examined in conjunction with the mandate to determine the nature and terms of the judgment to be entered or the action to be taken thereon."

In the opinion in *State ex rel. Johnson v. Hash, supra,* it

is said: "It will be noted that the mandate makes the opinion of the court a part thereof by reference. Under such circumstances, the opinion of the court can properly be examined in determining the nature and terms of the judgment to be entered or action to be taken. This seems to be the rule when the opinion is made a part of the mandate * * * ." See cases cited therein.

It is apparent from the original opinion of *Glissmann v. Bauermeister, supra,* that this court did not find that Serena E. Grabow should receive both shares, but that each party had pledged his or her share in their father's estate. "Where the mandate is ambiguous or uncertain the lower court may apply the usual rules of interpretation in its construction and may examine the opinion of the appellate court to ascertain the true intent and purpose of the mandate." 5 C. J. S., sec. 1963, p. 1494. In applying this rule and reading the original opinion in *Glissmann v. Bauermeister* in the light of what was necessarily involved and under consideration, and without giving its language a strained construction, it is obvious that the judgment pronounced in the supplemental opinion is ambiguous when the original opinion is properly considered.

Under the circumstances the district court, to determine the judgment that should be entered, took into consideration the original opinion in *Glissmann v. Bauermeister, supra.* Further to determine the status with reference to the pledge of Serena E. Grabow and Henry C. Glissmann, the court appointed a master to take testimony and make findings therefrom and from which, as shown by the master's report, determine the amount paid in by the trustees and others from the estate of Hans Glissmann and for the benefit of Serena E. Grabow and Henry C. Glissmann and his assigns.

There is some contention made by the appellees that the five acre tract, wherein Tena E. Glissmann's equity was fixed at $1,500 which she pledged to Serena E. Grabow who in turn pledged the same to Edmond H. Orchard so that the lease option agreement could be consummated, be returned

to Tena E. Glissmann or, in the alternative, she be given a lien thereon, subject to an amount paid by Edmond H. Orchard to complete the purchase of the five acres, and interest be determined on the amount for 16 years and be awarded to Tena E. Glissmann.

The lease option agreement provides for a deed to Edmond H. Orchard for the 70 acres, and likewise provides for the terms by which the 70 acres may be redeemed. Tena E. Glissmann, having the right to redeem, failed to comply with the lease option agreement. The record discloses that Henry C. and Tena E. Glissmann retained possession of the premises under the lease option agreement for five years, and under the moratorium law for at least an additional seven years. Under the circumstances there is no obligation on the part of Serena E. Grabow or Edmond H. Orchard to account to Tena E. Glissmann for such pledge.

We conclude that any money up to the amount that Serena E. Grabow is entitled to receive as her share of her father's estate and now in her hands should be credited to her; that any remaining liability chargeable to Serena E. Grabow by Edmond H. Orchard by reason of the lease option agreement be finally determined, and such amount as the court may find be paid from the share of Henry C. Glissmann and his assigns that they have in the estate of Hans Glissmann, and the remaining pledged property, if any, under the control of Edmond H. Orchard be released by him; that Henry C. Glissmann and his assigns pay all costs in the district court and in the supreme court, including the fees awarded the master and the attorney for Serena E. Grabow in the district court. Any moneys thereafter remaining in the hands and under the control of Serena E. Grabow, the trustees, or the court, constituting the share of Henry C. Glissmann and his assigns in the Hans Glissmann estate, should be paid to Henry C. Glissmann or his assigns as the court may order. The report of the master is approved and the cause remanded for further proceedings in accordance with this opinion.

REMANDED FOR FURTHER PROCEEDINGS.

CHAPPELL, J., dissents.