BETHINE W. BARNEY, APPELLEE, V. PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT, APPELLANT.
MARTIN ROBLES, APPELLEE, V. PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT, APPELLANT.

13 N. W. 2d 120

FILED FEBRUARY 9, 1944. Nos. 31716, 31717.

*Beeler, Crosby & Baskins,* for appellant.

*Dryden & Jensen, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

SIMMONS, C. J.

These cases come on for consideration on a motion to dismiss for failure of the appellant to deposit the docket fee with the clerk of the district court as provided by section 20-1912, Comp. St. Supp. 1941. We sustain the motion to dismiss.

The actions are for damage to crops and lands from waters discharged upon plaintiffs' land. Plaintiffs were successful in the trial court and defendant appeals.

On August 10, 1943, separate transcripts were filed in this court in each of the above entitled causes. The transcript shows that motions for rehearing were overruled in the trial court on May 14, 1943.

Copies of the notice of appeal, showing that it was filed with the clerk of the district court on August 9, 1943, were received by the clerk of this court from the clerk of the district court on August 10, 1943. On the same date there was paid to the clerk *of this court*, by the defendant, a docket fee of $20 in each case.

Thereafter the cases were docketed here.

August 19, 1943, there was filed a motion for consolidation supported by a stipulation providing that the actions should be consolidated in this court for briefs and argument. Pursuant to that stipulation this court, on September 18, 1943, entered an order of consolidation for briefing and argument. Also on August 19, 1943, there was filed a stipulation agreeing that defendant's brief day should be continued until October 10, 1943. Pursuant thereto, this court on September 18, 1943, entered an order extending the defendant's brief day to that date.

October 6, 1943, defendant, as appellant, filed its "consolidated brief" herein and proof of service made showing service upon attorneys for plaintiffs as appellees.

November 3, 1943, there was filed a stipulation providing that plaintiffs', as appellees, brief day should be extended until December 6, 1943. Pursuant thereto, this court on November 3, 1943, entered an order extending the plaintiffs' brief day to that date.

November 13, 1943, there was filed by the plaintiffs, as appellees, a motion to dismiss on the ground that the defendant, as appellant, had not deposited the docket fee with the clerk of the district court and that therefore this court had "no jurisdiction over said appeal."

December 3, 1943, there was filed a stipulation showing that a motion to dismiss was pending and stipulating that appellees' brief day may be continued until December 21, 1943. This court on December 3, 1943, entered an order

extending the plaintiffs' brief day to that date. The motion to dismiss herein was submitted by oral argument on December 6, 1943.

December 16, 1943, a further stipulation was filed extending appellees' brief day to January 21, 1944. This court on December 21, 1943, entered an order extending the plaintiffs' brief day to that date.

The precise question therefore presented is this: Where, under the circumstances set out in this opinion, an appellant, in appealing to this court, fails to deposit the docket fee with the clerk of the district court, does pay it to the clerk of this court, and thereafter the appellee treats the appeal as perfected, enters appearances in this court, and participates in the progress of the appeal proceedings here, does this court then have jurisdiction of the cause?

The constitutional provision regarding the jurisdiction of this court is "The supreme court shall have jurisdiction in all cases * * * in which the state is a party, mandamus, quo warranto, habeas corpus, and such appellate jurisdiction as may be provided by law." Const. art. 5, sec. 2.

Section 20-1911, Comp. St. 1929, provides as follows: "A judgment rendered or final order made by the district court may be reversed, vacated or modified by the supreme court, for errors appearing on the record."

The Constitution also provides: "The right to be heard in all civil cases in the court of last resort, by appeal, error or otherwise, shall not be denied." Const. art. 1, sec. 24. Under the long established construction of this section it has been held that it "does not prohibit the legislature from prescribing reasonable rules and regulations for the review of a cause by appeal, * * * ." See *In re Estate of Mathews,* 125 Neb. 737, 252 N. W. 210. The clearly stated and easily followed requirements of the legislature as set out in said section 20-1912, *supra,* are reasonable.

Previous to the enactment of chapter 32, Laws 1941 (now sec. 20-1912, Comp. St. Supp. 1941), the statute provided: "The proceedings to obtain a reversal, vacation or modification of judgment and decrees rendered or final orders made

by the district court, except judgments and sentences upon convictions for felonies and misdemeanors under the criminal code, shall be by filing in the supreme court a transcript certified by the clerk of the district court, containing the judgment, decree or final order sought to be reversed, vacated or modified, within three months from the rendition of such judgment or decree or the making of such final order or within three months from the overruling of a motion for a new trial in said cause; the filing of such transcript shall confer jurisdiction in such cause upon the supreme court."

The above provision of the statute was amended in the 1941 act so as to provide that "The proceedings to obtain a reversal, vacation or modification of judgments and decrees rendered or final orders made by the district court, except judgments and sentences upon convictions for felonies and misdemeanors under the criminal code, shall be by filing in the office of the clerk of the district court in which such judgment, decree or final order was rendered, within three months after the rendition of such judgment or decree, or the making of such final order, or within three months from the overruling of a motion for a new trial in said cause, a notice of intention to prosecute such appeal signed by the appellant or appellants or his or their attorney of record, and by depositing with the clerk of the district court the docket fee required by law in appeals to the supreme court. An appeal shall be deemed perfected, and the supreme court shall have jurisdiction of the cause, when such notice of appeal shall have been filed, and such docket fee deposited, in the office of the clerk of the district court, and after being so perfected no appeal shall be dismissed without notice, and no step other than the filing of such notice of appeal and the depositing of such docket fee shall be deemed jurisdictional. The clerk of the district court shall forthwith forward such docket fee, and a certified copy of such notice of appeal, to the clerk of the supreme court, whereupon the clerk of the supreme court shall forthwith docket such appeal. Within the same period of three months the appel-

lant or appellants shall file in the supreme court a transcript certified by the clerk of the district court, containing the judgment, decree or final order sought to be reversed, vacated or modified. Neither the form nor substance of such transcript shall affect the jurisdiction of the supreme court."

It will thus be noted that under the act as it existed prior to 1941 the filing of the transcript within the time set out was necessary to confer jurisdiction of the cause upon this court; and that under the provisions of the 1941 act the appeal shall be "deemed perfected, and the supreme court shall have jurisdiction of the cause, when such notice of appeal shall have been filed, and such docket fee deposited, *in the office of the clerk of the district court,* * * * ."

These "constitute the only jurisdictional steps to get a case into the supreme court." *Glissmann v. Bauermeister,* 141 Neb. 288, 3 N. W. 2d 555.

Under the provisions of the act, prior to the 1941 amendment, it had been consistently held that this court did not acquire jurisdiction of a cause unless the transcript was filed here within the three-month period. This holding is based upon the principle that this court, " * * * except in those cases wherein original jurisdiction is specially conferred upon it by section 2, art. V of the Constitution, exercises appellate jurisdiction only, and such appellate jurisdiction can only be conferred in the manner provided by statute." *Larson v. Wegner,* 120 Neb. 449, 233 N. W. 253. In the earlier case of *State ex rel. Ayres v. Amsberry,* 104 Neb. 273, 178 N. W. 822, this court on motion for rehearing used language similar to the above and further said that appellate jurisdiction " * * * cannot be conferred by stipulation * * * of the parties, nor does the filing of briefs constitute a waiver. Nothing but the filing of a transcript in this court within the time prescribed can vest this court with jurisdiction of the subject-matter. No stipulation, consent, or waiver of the parties can take the place of the filing of the transcript." Applying the same reasoning to the act as amended in 1941, it must necessarily be held that this court

has no power to exercise appellate jurisdiction in proceedings to review the judgment of a district court in civil cases unless the appellant shall have filed a notice of appeal and deposited the docket fee in the office of the clerk of the district court, within the time fixed and as provided in section 20-1912, Comp. St. Supp. 1941.

The appellate jurisdiction of a court is contingent upon timely compliance with constitutional or statutory methods of appeal. Failure to comply with the required conditions terminates the potential power of an appellate court to acquire thereafter any jurisdiction to review the judgment below. An appeal is not perfected until the jurisdictional steps required by statute or constitutional provision have been taken within the time fixed by the applicable provisions. Appellate jurisdiction of a case cannot be conferred upon a court by any action of the parties. The want of such jurisdiction may be taken advantage of at any stage of the proceedings. An appellate court cannot pass on the merits of a case falling within its appellate jurisdiction unless its jurisdiction is invoked in the manner prescribed by Constitution or statute. See 3 C. J. 316, 356, 371, 1040; 4 C. J. S. 81, 116, 126, 881, 922; 15 C. J. 847; 21 C. J. S. 167, sec. 110; 2 Am. Jur. 846, 854.

In *Greb v. Hansen*, 123 Neb. 426, 243 N. W. 278, this court had before it for construction section 20-1914, Comp. St. 1929. We there held that the giving of the cash bond was mandatory and jurisdictional, stated that "it was the intent of the legislature that only by the performance of certain acts could the appellate power of the supreme court be invoked" and it was not the intention of the legislature to refer the matter of furnishing a cash bond within a certain time to the discretion of appellant or to the court; and that when such a bond was not filed as provided the appeal must be dismissed. In the course of the *Greb* opinion we discussed the provision of section 20-1702, Comp. St. 1929, and stated that it was not the intention of the legislature, in that section, to make mandatory and jurisdictional the requirements of the giving of a cash bond by a nonresident.

The difference in the provisions is that section 20-1702, *supra,* provided for dismissal on motion and notice "unless in a reasonable time to be allowed by the court, such security for costs be given or cash bond be furnished." By the same bill by which section 20-1912, *supra,* was amended, the legislature also amended section 20-1914, *supra,* so as to provide: "The appeal or error proceedings may be dismissed on motion and notice in the supreme court if no bond has been given and certified in the transcript, *or within such additional time as may be fixed by the supreme court for good cause shown."* Laws 1941, ch. 32, sec. 2. (The emphasized matter is new in the amendment.) No such language was written into section 20-1912 as amended.

It is clear that the 1941 legislature intended to remove the giving of a cash bond from the mandatory and jurisdictional requirements in perfecting an appeal. It is just as clear that the legislature intended that the filing of the notice of appeal and the depositing of the docket fee "in the office of the clerk of the district court" should be both mandatory and jurisdictional.

It must necessarily be held that it was the intent of the legislature that only by the performance of those certain acts could the appellate power of this court be invoked, and that where those steps have not been taken this court has no jurisdiction to determine the merits of the controversy and no alternative but to dismiss the appeal. To hold otherwise would be for this court to judicially amend the statute, and that we have no constitutional power to do.

The motion to dismiss the appeal is sustained.

CHAPPELL, J., dissenting.

I cannot agree with the conclusions arrived at in the majority opinion on the motions to dismiss appeals. Without question section 20-1912, Comp. St. Supp. 1941, contains directory provisions which, if complied with, confer jurisdiction on the supreme court to entertain appeals, and doubtless it was the design of the legislature to simplify and to make certain the procedure in this respect. However, in the absence of specific declaration or clear implica-

tion, which I do not find in the section, I cannot believe that the legislature intended that appeals should be defeated and judicial review denied by failure to comply with a mechanical detail when all of the substantial requirements are met and within the time provided by law for perfection of appeals.

Specifically section 20-1912, Comp. St. Supp. 1941, provides that in cases of this kind the proceedings to obtain reversal, etc., shall be by filing, within three months, in the office of the clerk of the district court in which the judgment is obtained, notice of appeal and by *depositing* with that clerk the docket fee which section 33-105, Comp. St. Supp. 1941, provides shall be paid to the *clerk of the supreme court.* Section 20-1912, *supra,* with regard to jurisdiction provides in part: " * * * and no step other than the filing of such notice of appeal and the depositing of such docket fee shall be deemed jurisdictional."

Construing the foregoing statutes literally, unless these two steps are taken no jurisdiction is ever conferred in any event. However, considered constructively, if notice of appeal is filed in the office of the clerk of the district court, then depositing there the docket fee is not a step exclusively required to ultimately confer jurisdiction.

In the light of the circumstances as disclosed by the record, and the consequences resulting in these and other like cases, I commit myself to the latter view. The proper notice was filed and the fee which was *payable* under the terms of section 33-105, Comp. St. Supp. 1941, to the clerk of the supreme court was there *paid* within the time required for *deposit* with the clerk of the district court. The appellees appeared generally and by their affirmative acts treated the appeals as having been perfected, and in all other respects requirements for perfection and prosecution of appeal were complied with. Therefore, it is my opinion that the motions to dismiss these appeals should be denied.

I am authorized to state that Yeager, J., joins in this dissent.

CARTER, J., concurring.

I am in full accord with the majority opinion, but I cannot permit the dissenting opinion to remain unchallenged.

The method of perfecting an appeal to the supreme court is provided by section 20-1912, Comp. St. Supp. 1941. It is a statute with which compliance must be had to give the supreme court jurisdiction of an appeal. As such its provisions are mandatory. In the early case of *Hurford v. City of Omaha,* 4 Neb. 336, 351, this court said: "When a fair interpretation of the statute, which directs acts or proceedings to be done in a certain way, shows that the legislature intended a compliance with such provision to be essential to the validity of the act or proceeding, or when some antecedent and prerequisite conditions must exist prior to the exercise of power, or must be performed before certain other powers can be exercised, then the statute must be regarded as mandatory." See Maxwell, Interpretations of Statutes, 316; *Greb v. Hansen,* 123 Neb. 426, 243 N. W. 278; *Glissmann v. Bauermeister,* 141 Neb. 288, 3 N. W. 2d 555. In the early case of *District Township of the City of Dubuque v. City of Dubuque,* 7 Ia. 262, it is said that "Affirmative words may, and often do, imply a negative of what is not affirmed, as strongly as if expressed. So, also, if by the language used, a thing is limited to be done in a particular form or manner, it includes a negative that it shall not be done otherwise. Affirmative expressions that introduce a new rule, imply a negative of all that is not within the purview." The statement that the provisions of section 20-1912 are directory is not supported by any authority in the dissent and I assert that every case on the subject which has been before this court has been decided directly to the contrary. The very first premise of the dissent being unsound, the result is bound to be likewise illogical.

The writer of the dissent states that he can find no specific declaration or clear implication that compliance with the jurisdictional requirements of the statute is mandatory. In the first place our Constitution provides that the supreme

court shall have "such appellate jurisdiction as may be provided by law." Const. art. 5, sec. 2. The law, section 20-1912, provides the method by which the supreme court obtains jurisdiction of a civil case on appeal. The right of appeal is not of common-law origin and it is therefore dependent upon constitutional and statutory authority for its existence. Consequently, the jurisdiction of the supreme court is dependent upon a compliance with section 20-1912, for otherwise no right of appeal exists. To say that jurisdiction may be lodged in the supreme court in any other manner than that provided by the plain words of the statute amounts to judicial legislation. The statute in part says: "The proceedings to obtain a reversal * * * shall be by filing in the office of the clerk of the district court in which such judgment * * * was rendered * * * a notice of intention to prosecute such appeal * * * and by depositing with the clerk of the district court the docket fee required by law in appeals to the supreme court. An appeal shall be deemed perfected, and the supreme court shall have jurisdiction of the cause, when such notice of appeal shall have been filed, and such docket fee deposited * * * ." The words are plain and unambiguous and, therefore, not subject to construction. Every rule of statutory construction requires that the statute be given its plain meaning and not be rewritten by judicial pronouncement under the guise of construing that which requires no interpretation. If we may escape the provisions of a mandatory and jurisdictional statute by the simple expedient of calling it directory, it would be a fruitless effort to attempt any distinction between a mandatory and a directory statute; and, by the same token, any legislative attempt to limit the appellate jurisdiction of the court could be similarly avoided.

I submit that the filing of the notice of appeal and the depositing of the docket fee with the clerk of the district court lodges the appeal in the supreme court, whether or not the notice of appeal or docket fee ever reaches the office of the clerk of the supreme court. I further submit that section 33-105, Comp. St. Supp. 1941, is merely a fee stat-

ute and no more jurisdictional in character than the statute which requires the clerk of the supreme court to pay docket fees into the hands of the state treasurer.

The lodging of jurisdiction in an appellate court is usually by some statutory affirmative act determined by the wisdom of the legislature as sufficient to invoke the appellate power of the court. Whatever act is determined upon to invoke the appellate powers of the supreme court, there will be those who for one reason or another will fail to follow it. This apparently works a hardship upon the litigant who has failed to properly invoke the provisions of the statute to obtain an appeal. The present act, section 20-1912, Comp. St. Supp. 1941, was evidently enacted to reduce the number of jurisdictional features in an appeal, to make them plain and simple so that they could be readily understood, to require their performance at the office of the clerk of the district court rather than the office of the clerk of the supreme court to overcome geographical inequalities, to enable the successful litigant to determine locally if an appeal is to be taken, and to reduce to a minimum by this means the number of ineffectual appeals. It is the duty of the supreme court to carry out the plain intent of the legislature, whether or not such action coincides with personal views.

The contention that appellees waived jurisdictional defects by their affirmative acts is without precedent in this state, or any other, in so far as I have been able to discover. Defects not going to the jurisdiction of the court may, of course, be waived by the parties. It is otherwise, and the courts uniformly so hold, where the defect goes to the jurisdiction of the court. Cases in this court to that effect are cited in the majority opinion.

I submit that the dissent filed is not supported by authority, that every point raised therein has been expressly decided by this court to the contrary and that it is violative of every rule of construction of statutes conferring a grant of appellate jurisdiction.

"It is, of course, a well-settled rule that when a court transcends the limits prescribed for it by law and assumes

to act where it has no jurisdiction, its adjudications will be utterly void and of no effect, either as an estoppel or otherwise." 2 Am. Jur. 850. To assume jurisdiction of appeals where mandatory provisions of the statute granting appellate jurisdiction have not been met would result in the entry of final orders subject to collateral as well as direct attack. To escape such a result would require the overruling of numerous opinions of this court and a complete revision of our judicial thinking on jurisdictional questions. The dissent expresses the concern that is felt for any litigant who fails to properly comply with jurisdictional requirements in perfecting an appeal. Further than that it has no merit.

I am authorized to state that Paine, J., joins in this concurring opinion.